## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 4950 | DATE | Sept. 20, 2002 |
| CASE TITLE | JCW Investments, Inc. v Novelty, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, plaintiff's motion for a preliminary injunction is granted. Plaintiff shall post security in the amount of $10,000.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | SEP 2 3 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 16 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



JCW INVESTMENTS, INC., d/b/a Tekky Toys, )
)
        Plaintiff, )
) No.   02 C 4950
v. )
) Judge Robert W. Gettleman
NOVELTY, INC., )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

If imitation is the highest form of flattery, can flatulence be far behind? Plaintiff JCW Investments ("Tekky Toys") filed this suit for injunctive and monetary relief against defendant Novelty, Inc. ("Novelty"), alleging that defendant's farting doll infringes its copyright in violation of 17 U.S.C. §§ 106, 501. Plaintiff also asserts claims of unfair competition in violation of the Lanham Act under 15 U.S.C. § 1125, violation of the Illinois Uniform Deceptive Trade Practices Act, and common law unfair competition. Plaintiff has moved for a preliminary injunction based upon its copyright infringement claim. For the reasons stated below, the court grants plaintiff's motion.

## BACKGROUND

Plaintiff Tekky Toys is an Illinois corporation with its principal place of business in Orland Park, Illinois. Tekky Toys designs and sells novelty items, including a plush toy called "Pull My Finger Fred" ("Fred"), which was introduced and first marketed to plaintiff's distributor network in 1997. On February 5, 2001, Fred's designers[1] obtained a certificate of

---

[1] Fred's designers are Geoff Bevington and James Wirt, Founder and President of Tekky Toys.

copyright registration for Fred, No. SRu434-019, which they assigned to Tekky Toys on July 11, 2002.

Defendant Novelty is an Indiana corporation with its principal place of business in Greenfield, Indiana. Like plaintiff, Novelty also sells plush toys. Two of defendant's toys, "Fartman" and his juvenile counterpart, "Fartboy," are at the heart of the instant dispute.

The crux of plaintiff's complaint is that defendant's Fartman and Fartboy infringe its copyright in Fred. Fred is a figure of a balding man in a white tank top, blue pants, and brown shoes, sitting in a green chair. When his right finger is pinched, Fred emits flatulence-like sounds, his chair vibrates, and he jokes about the sound he just made (for example, "Silent, but deadly," and "Did somebody step on a duck?"). Fred has been featured on "The Howard Stern Radio Show," the nationally-syndicated WGN-network news, and PBS-affiliate WTTW's "Wild Chicago" program, and has been exhibited at numerous trade shows. Plaintiff has sold approximately 200,000 Fred units, and has developed an entire line of toys around this concept, including: "Pull My Finger Fat Bastard," "Pull My Finger Freddy Baby," "Pull My Finger Phart Boy," and "Pull My Finger Santa."

Fartman is a figure of a balding man in a brown vinyl chair, wearing blue pants, white shoes, a white tank top with "Fartman" emblazoned across his chest in red lettering, and a red cap. When his right finger is pinched, Fartman emits flatulence-like sounds, his chair vibrates, and he jokes about the sound he just made (for example, "Rip-it-y-do-dah!"). Fartboy is substantially similar to Fartman, except that Fartboy's flatulence is triggered by pulling his

2

"disproportionately large plastic finger" and he is significantly smaller in size than Fartman and Fred.[2]

In March 2002, plaintiff learned that defendant was selling Fartman and Fartboy. On July 12, 2002, plaintiff filed this suit seeking a preliminary injunction to enjoin defendant from manufacturing, importing, promoting, marketing, selling or distributing Fartman, Fartboy, or any other work that is substantially similar to Fred.

In support of its motion, plaintiff alleged that one of its distributors has recently encountered resistance in marketing Fred, due to the availability of defendant's more inexpensive Fartman toys. Moreover, plaintiff alleged that its difficulties were further aggravated by defendant's recent reduction of Fartman prices to "liquidation" levels, priced at $3.75 per unit, as compared to Fred's $14.99 sale price. Plaintiff further expressed concern about defendant's plans to market Fartman at the ASD/AMD Trade Show, held in Las Vegas from August 11- August 15, 2002. In its August 14, 2002, response, defendant maintained that plaintiff had failed to allege appropriation of "protectible" expression, and that, in any event, defendant had ceased selling Fartman, thus obviating the need for a preliminary injunction.

## DISCUSSION

To obtain a preliminary injunction in a claim of copyright infringement, the movant must demonstrate: (1) some likelihood of success on the merits; (2) absence of an adequate remedy at law; and (3) that it will suffer irreparable harm absent injunctive relief. Publications International, Ltd. v. Meredith Corp., 88 F.3d 473, 478 (7th Cir. 1996). After these threshold

---

[2]The court has viewed exemplars of Fred, Fartman and Fartboy; their photographs are attached as an appendix.

requirements are met, the district court then balances the irreparable harm to the movant against the harm that would be suffered by the non-movant, as well as non-parties, if preliminary injunctive relief were granted. Id. See also Ty, Inc. v. GMA Accessories, Inc., 959 F.Supp. 936, 939 (N.D.Ill. 1997), aff'd 132 F.3d 1167 (7th Cir. 1998). In balancing the harms to parties and the public, the court uses a "sliding scale" approach, so that "the more likely it is the movant will succeed on the merits, the less the balance of irreparable harms need weigh toward its side...." Abbott Lab. v. Mead Johnson & Co., 971 F.2d 6, 12 (7th Cir. 1992).

Likelihood of Success on the Merits

To establish copyright infringement, a plaintiff must prove ownership of a valid copyright, and "copying" of the protected work by the defendant. Atari, Inc. v. North American Philips Consumer Electronics Corp., 672 F.2d 607, 614 (7th Cir. 1982), cert. denied, North American Philips Consumer Electronics Corp. v. Atari, Inc., 459 U.S. 880 (1982).

17 U.S.C. § 410 (c) provides that, "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." See also Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 507 (7th Cir. 1994). In the instant case, plaintiff has provided a copy of its certificate of registration, the validity of which has not been challenged by defendant. In the absence of evidence to the contrary, the court accepts plaintiff's contention that Fred is protected by a valid copyright.

The next issue, then, is whether defendant "copied" plaintiff's protected work. Because direct evidence of copying is rare, copying may be inferred where, (1) the defendant had access to the copyrighted work, and (2) the accused work is substantially similar to the copyrighted work.

4

Atari, 672 F.2d at 614, citing Warner Brothers, Inc. v. American Broadcasting Cos., Inc., 654 F.2d 204, 207 (2d Cir. 1981).

Broad public display of a product may give rise to an inference of access. Ty, Inc. v. GMA Accessories, Inc., 959 F.Supp. at 940, citing Eve of Milady v. Impressional Bridal, Inc., 957 F.Supp. 484, 488-489 (S.D.N.Y. 1997). Defendant does not dispute that Fred has enjoyed significant publicity and national exposure, nor that defendant had access to Fred. Rather, the disagreement among the parties in the instant case focuses on whether Fred is substantially similar to Fartman and Fartboy.

The test for substantial similarity focuses on the response of the "ordinary observer," and asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." Atari, 672 F.2d at 614; see also Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960) (holding that two works are substantially similar if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same"). This test does not involve "analytic dissection and expert testimony," but instead turns on whether the accused work has captured the "total concept and feel" of the copyrighted work. Atari, 672 F.2d at 614, citing Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946).

Courts have repeatedly emphasized that the protection granted to a copyrightable work extends only to the particular expression of an idea, rather than the idea itself. See Mazer v. Stein, 347 U.S. 201, 217, 74 S.Ct. 460, 470 (1954); id. at 615; Reyher v. Children's Television Workshop, 533 F.2d 87, 90 (2d Cir. 1976), cert. denied, 429 U.S. 980 (1976). Of course, as

observed by Judge Learned Hand, "Obviously, no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.'" See Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d at 489.

Defendant maintains that the similarities between Fred, Fartman, and Fartboy fall within the realm of unprotected elements. Specifically, defendant characterizes the "idea" of Fred quite narrowly as a "plush toy 'classic dad' or 'uncle' lounging in a chair that has a vibrating fart and makes scatological cliches when his finger is pulled." Moreover, defendant urges the court to categorize the obvious similarities between Fred, Fartman, and Fartboy - the blue pants, white tank top, balding head and smiling face - as "scenes a faire," which receive protection only for virtually identical copying. See Atari, 672 F.2d at 616 ("scenes a faire refers to 'incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic'"). Plaintiff, in contrast, maintains that the idea behind Fred is that of a "farting doll," and that Fred's armchair, blue pants, white tank top, balding head and smiling face are a protectible artistic expression of that idea.

The court, at this stage in the proceedings, is inclined to agree with plaintiff that the idea behind Fred is that of a "farting doll." Further, the court is persuaded that "Pull My Finger Fred" is simply one among many possible expressions of that idea. Indeed, the concept of a farting doll certainly does not dictate a balding male, reclining in an armchair, wearing blue pants and a white tank top, whose flatulence sounds are activated by squeezing his right finger and always

followed by some sort of commentary.[3] The court finds, therefore, that these aspects of Fred, taken together, are protectible under copyright law.

Moreover, the court finds that whatever differences exist among the toys pale in comparison to their overwhelming similarities. The most obvious physical differences are: Fartman and Fartboy each wear hats, whereas Fred does not; Fartman's white tanktop has "Fartman" written across the front, whereas Fred's white tanktop is blank; Fartboy is considerably smaller than either Fartman or Fred; Fartboy's flatulence is activated by pulling his right finger (which is attached by a string and extends six inches from his hand when pulled), whereas Fartman and Fred are both activated by squeezing their right hands. With respect to the phrases each toy utters, Fartman, Fartboy, and Fred all say, "Did somebody step on a duck?" and "Silent, but deadly"; otherwise, Fartboy and Fartman do not share any phrases in common with Fred.

Defendant also catalogues a number of minor differences between the toys, which the court finds unpersuasive. Defendant contends, for example, that "Fartman's left hand has four fingers; Fred's left hand has three fingers.... Fartman's shoes have white bottoms; Fred's feet have black bottoms.... Fartman has eyes with solid retinas; Fred has eyes with annular retinas.... Fartman's teeth are long; Fred's teeth are short."

Notwithstanding these differences, the court concludes that, in Fartman and Fartboy, defendant has captured the "total concept and feel" of Fred, such that an ordinary observer would

---

[3]Even assuming the "idea" is that of a classic dad or uncle lounging in a chair that has a vibrating fart and makes scatological cliches when his finger is pulled, as contended by defendant, Fred's blue pants, white tank top, balding head and smiling face are certainly not indispensable or standard expressions of that idea.

7

likely conclude that defendant unlawfully appropriated plaintiff's protectible expression. See Atari, 672 F.2d at 618 ("although numerous differences may influence the impressions of the ordinary observer, [slight differences] will not preclude a finding of infringement where the works are substantially similar in other respects"). Indeed, neither exact reproduction nor near identity is necessary to establish copyright infringement. Id.

The court's determination that plaintiff would likely prevail in demonstrating that the toys are substantially similar is bolstered by an intuition that the consumer audience seeking to buy a flatulence toy is probably not particularly concerned with minor differences in appearance or fabric. See id. ("Video games, unlike an artist's painting or even other audiovisual works, appeal to an audience that is fairly undiscriminating insofar as their concern about more subtle differences in artistic expression").

Based on the foregoing analysis, the court finds that plaintiff has established a likelihood of success on the merits with respect to its copyright infringement claim. Plaintiff has provided prima facie evidence of a valid copyright, which has not been disputed by defendant. Further, the court is persuaded, based on the evidence before it, that defendant "copied" Fred.

Inadequate Remedy at Law & Irreparable Injury

Courts may presume that all damages incurred due to copyright infringement are irreparable, such that any legal remedy would be inadequate. Ty, Inc. v. GMA Accessories, Inc., 959 F.Supp. 936, 943 (N.D.Ill. 1997), aff'd 132 F.3d 1167 (7th Cir. 1998). See also Atari, 672 F.2d at 620.

Defendant attempts to rebut this presumption by asserting in its response that Fartman and Fartboy are no longer being sold, and that plaintiff is therefore not suffering any injury. The

8

court disagrees, however. First, a mere assertion in the pleadings, without an affidavit, is not sufficient to convince the court that defendant is no longer selling, or intending to sell in the future, Fartman or Fartboy. Moreover, even if defendant were not selling those products, the scope of the injunction sought by the plaintiff goes beyond simply selling Fartman and Fartboy, and includes "manufacturing, importing, promoting... offering for sale or otherwise distributing the plush toys 'Fartman' or 'Fartboy' and *any other work that is substantially similar to* Tekky Toys' 'Pull My Finger Fred'" (emphasis added). Hence, defendant's purported cessation of selling Fartman and Fartboy does not obviate the need for plaintiff's requested preliminary injunction.[4] The court thus finds that the presumption of irreparable harm is applicable to the instant dispute.

Balance of Irreparable Harms

Having determined that plaintiff has satisfied the three threshold criteria for the issuance of a preliminary injunction, the court must balance the irreparable harms to plaintiff, defendant and non-parties. As noted earlier, the court presumes that plaintiff will remain irreparably harmed by defendant's alleged copyright infringement in the absence of a preliminary injunction. Further, the public interest in preserving the integrity of copyright laws will also be served by granting a preliminary injunction. See Atari, 672 F.2d at 620.

Defendant, in contrast, will not suffer any harm if the preliminary injunction is issued. Defendant contends that it has already ceased selling Fartman and Fartboy and cannot therefore claim any injury that would arise from the proposed injunction. The court finds, therefore, that

---

[4]Further, the court notes that defendant may resume selling Fartman and Fartboy in the absence of a preliminary injunction. See Ty, Inc. v. GMA Accessories, Inc., 959 F.Supp. at 944.

the balancing of irreparable injuries to parties and non-parties favors granting the requested injunction.

Having determined that the requirements for the issuance of a preliminary injunction are satisfied in the instant case, the court grants plaintiff's motion.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction is granted. Defendant Novelty, Inc., along with its officers, agents, servants, employees, and all persons in active concert or participation with them, are hereby preliminarily enjoined during the pendency of this action from manufacturing, importing, promoting, marketing, selling, offering for sale or otherwise distributing the plush toys "Fartman" or "Fartboy" and any other work that is substantially similar to Tekky Toys' "Pull My Finger Fred" plush toy. Plaintiff Tekky Toys shall forthwith post security in the amount of $10,000 for the payment of such costs and damages as may be incurred and suffered by any party found to be wrongfully restrained.

**ENTER:** September 20, 2002

Robert W. Gettleman
United States District Judge



FRED



FARTMAN



FARTBOY