UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**FILED**
JUL 2 3 2004

Judge Robert W. Gettleman
United States District Court

| JCW Investments, Inc. (d/b/a Tekky Toys), | |
|---|---|
| Plaintiff, | No. 02 C 4950 |
| | Judge Gettleman |
| v. | Magistrate Judge Ashman |
| Novelty, Inc. | Jury Trial Demanded |
| Defendant. | |

**DOCKETED**
JUL 2 6 2004

## PLAINTIFF'S VERIFIED PETITION FOR FEES AND EXPENSES

Pursuant to Local Rule 54.3 and the court's May 28, 2004 Order awarding plaintiff "its full attorneys' fees," plaintiff submits this verified fee petition. Plaintiff seeks $540,541.69 in attorneys' fees, $12,645.55 in litigation expenses and costs, and $14,147.84 in prejudgment interest on fees and expenses, for a total award of $567,335.08. The fees represent 2,034.25 hours of attorney time and 297.75 hours of legal assistant time.

The award sought is reasonable and warranted given the cantankerous nature of the case and the results achieved. The case was a total victory for plaintiff, and a total defeat for defendant. Plaintiff obtained: (1) a preliminary injunction against sales of defendant's illegal copy dolls; (2) summary judgment of liability for copyright infringement; (3) a jury verdict finding liability and awarding monetary compensation on all counts, and awarding punitive damages; and (4) a permanent injunction and destruction order. Defendant did not prevail on any defense or counterclaim.

Defendant Novelty, in typical fashion, objects to every time entry submitted by plaintiff. Novelty's extreme position flies in the face of Local Rule 54.3, which requires the parties to "confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded," and to identify "the specific hours, billing rates, and related nontaxable expenses that in the parties' respective views are reasonable and should be compensated."

There is not a single time entry that Novelty agrees is "reasonable and should be compensated." Novelty thus did not "attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded." Novelty's objections are without merit in any event, and should be disregarded.

115

## Legal Standards

The district court has broad discretion in determining the amount of attorneys' fees and costs to be awarded. *See Florin v. Nationsbank of Georgia*, 60 F.3d 1245, 1247 (7th Cir. 1995); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 518-519 (7th Cir. 1993). The starting point for calculating a fee award is the "lodestar" amount, *i.e.* "the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). *See also Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995) (same).

The court may make upward or downward adjustments to the lodestar amount submitted. *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995). "There are several factors that a court should consider when calculating attorney's fees, including (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.*

Of these, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. *See also Tolentino*, 46 F.3d at 652. The fee award should be commensurate with the results but need not be proportionate to the monetary damage award. *Alexander v. Gerhardt Enterprises. Inc.*, 40 F.3d 187, 193-94 (7th Cir. 1994).

## Fees

The fees submitted by plaintiff, calculated by the lodestar method, total $568,991.25.[1] Plaintiff's complete success in the case merits an award equal to 100% of the lodestar amount. To ease the court's burden, however, plaintiff seeks an award of 95% of the lodestar, totaling $540,541.69.

Hourly Rates. In determining a reasonable hourly rate, "the best evidence is the hourly rate customarily charged by counsel or by her law firm." *Tomazzoli v. Sheedy*, 804 F.2d 93, 98

---

[1] This figure does not include time that will be spent on plaintiff's reply in support of its fee petition. Plaintiff will supply updated numbers with its reply.

(7th Cir. 1986). *See also People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) ("the attorney's actual billing rate for comparable work is presumptively appropriate to use").

Here, the hourly rates used in plaintiff's lodestar calculation are $310 for partners in 2002, $335 for partners in 2003-04, $220 per hour for the associate, and $60 to $100 per hour for legal assistants (depending on experience). These are rates which plaintiff's counsel actually received for comparable work during the pendency of this case. (Smith Dec. ¶ 9, & Tab 3.) The lodestar rates for Berten, Smith and Dennerline are actually lower than rates that have been charged for their work on other intellectual property litigation matters. (Smith Dec. ¶ 10.) These rates should be used in the fee award.

In addition, plaintiff has submitted evidence describing the qualifications and experience of its counsel. (Smith Dec. ¶¶ 11-12.) Their billing rates are commensurate with those of other lawyers handling intellectual property matters in the Chicago area. (Smith Dec. ¶ 13 & Tab 4 at 73.)

Finally, the rates used in plaintiff's lodestar calculation are commensurate with rates used for fee awards in similar cases. *E.g., Microsoft Corp. v. T&S Int'l Corp.*, 2004 U.S. Dist. Lexis 3273, *1 (N.D. Ill. 2004) (copyright, trademark, unfair competition: $265 to $450 per hour); *Medline Industries, Inc. v. Medline Products Co.*, 2004 U.S. Dist. Lexis 12741, *3-4, 7-8 (N.D. Ill. 2004) (trademark infringement, unfair competition: $170 to $380 per hour); *In Re: Aimster Copyright Litigation*, 2003 U.S. Dist. Lexis 6270, *6-8 (N.D. Ill. 2003) (copyright infringement: $230 to $500 per hour).

Defendant does not object to any of the hourly rates in plaintiff's lodestar *per se*. But, defendant argues that the aggregate rate of all attorneys should have remained the same throughout trial preparation and trial as it was during discovery, when most of the work was done by an associate. Defendant's argument is specious and should be disregarded. It was necessary for a partner to handle the case September 2003, because the associate working on the case (the firm's only associate) resigned from the firm. In any event, it was also reasonable for trial preparation and trial to be handled by more senior attorneys with actual trial experience.

<u>Number of Hours</u>. Plaintiff's lawyers have worked 2,034.25 hours on this matter, its legal assistants 297.75. This time was necessarily and reasonably spent. (Smith Dec. ¶¶ 2-7.)

This case involved claims for copyright infringement, trademark infringement, federal and common law unfair competition, and violation of the Illinois Deceptive Trade Practices Act. Defendant asserted a number of affirmative defenses, and a counterclaim for cancellation of plaintiff's federal trademark registration. The work done by plaintiff's lawyers included obtaining a preliminary injunction; conducting discovery; preparing a pretrial order; then a successful motion for summary judgment to simplify the case for trial; then a second pretrial order, modified to account for the summary judgment ruling; then a full jury trial followed by post-trial motions.

As with the present fee petition proceeding, every step of this case has been hotly contested by defendant. Defendant's strategy throughout has been to force plaintiff and its counsel to incur as much time and expense as possible. To obtain discovery, plaintiff was forced to file three motions to compel, which were granted. (See Dkt. 28, 29, 31, 33, 34, 40: plaintiff motions to compel and orders granting same.) Defendant's extreme positions made the task of obtaining a set for jury instructions an arduous ordeal. (See Dkt. 72, 73, 74, 75, 84, 85: briefs and orders pertaining to jury instruction disputes.)

Defendant advances a host of objections too numerous to address in detail. Such an approach is inappropriate: "A request for attorney's fees should not result in a second major litigation." *Estate of Borst v. O'Brien*, 979 F.2d 511, 514 (7th Cir.1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). In any event, defendant's objections are without merit and should be disregarded.

Defendant objects to plaintiff's counsel's recording of time in increments of 0.25 hours, on the speculation that the lawyers used this practice to inflate their time entries. To correct for this imagined overbilling, defendant proposes arbitrarily deducting 0.1 hours from every time entry. This objection is based wholly in defendant's imagination. Plaintiff's counsel's time entries were contemporaneously recorded, and they are accurate. There was no overstating of the time worked. (Smith Dec. ¶ 6.) Defendant's accusations are reckless and baseless, and should be disregarded.

Defendant objects to all time spent obtaining the preliminary injunction, because allegedly "a simple phone call would have resolved the issue." That is pure fantasy. Defendant opposed the motion for preliminary injunction. When the motion was filed, defendant was selling illegal copies of plaintiff's copyrighted doll, intended to continue selling them, and would

4

not have stopped if it had not been enjoined. Indeed, defendant recently moved for a stay of the order to destroy the illegal copies remaining in inventory, because defendant still intends to sell them if the ruling of copyright infringement is reversed on appeal.[2] For Novelty to claim that "a simple phone call would have resolved the issue" of cessation of infringing sales during the pendency of the suit is wholly disingenuous.

Defendant objects to awarding fees for time spent on motions on which plaintiff purportedly did not prevail. First, defendant misstates the facts. Defendant says plaintiff lost its January 6, 2003 motion to compel. That is not true; the motion was granted. (Dkt. 34: "Plaintiff's motion to compel filed 1/6/03 is granted.") Defendant claims to have won all motions in limine. That is not true; the rulings went both ways. (See Tab B, Transcript of 1/16/04 pretrial conference.) Incredibly, defendant even states that none of plaintiff's contested post-trial motions were successful. That is not remotely true; plaintiff prevailed in its motion prejudgment interest, and for an award of attorneys' fees. (Dkt. 105, 5/28/04 Mem. Op. and Order.)

Second, defendant's argument that fees cannot be awarded for unsuccessful motions is wrong:

> "as for the unsuccessful motions.... the appropriate standard for attorneys' fees is 'necessary and reasonable' *not* 'necessary and successful.' As the prevailing party under § 505, Devcom is entitled to reasonable attorneys' fees for the litigation, not simply for successful motions. The issue is reasonableness, and this Court finds that the fees associated with the unsuccessful motions were reasonable under the circumstances."

*NLFC, Inc. v. Devcom Mid-America, Inc.*, 916 F. Supp. 751, 761 (N.D. Ill. 1995) (awarding fees to defendant in copyright case) (emphasis in original).

Defendant objects to Mr. Smith's attendance at some hearings as excessive. As the lawyer ultimately responsible for trying the case, it was reasonable for Mr. Smith to attend certain key hearings addressing important aspects of the case. *E.g., Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985) (participation of non-participating attorneys in strategy conferences,

---

[2] This is not the first time defendant has tried to sell this story. After the motion for preliminary injunction was filed, defendant's counsel represented (falsely) to plaintiff's counsel that defendant had already stopped selling the copy dolls. But when plaintiff proposed that, if that were the case, defendant should simply agree to the preliminary injunction, defendant refused. (Tab C, 7/19/02 letter from Smith, and 7/22/02 response from Lueders.)

negotiations, and meetings is not unnecessary or excessive if crucial to the attorney's subsequent participation in the case).

Defendant generally objects to most of plaintiff's time entries as "excessive." Suffice to say it requires a lot of work to research and refute the constant stream of misstatements of fact and law coming from defendant. As just one of many possible examples, regarding jury instruction no. 27, defendant claimed that, after having agreed to the Ninth Circuit pattern instruction concerning recovery of defendant's profits for unfair competition, it learned that the law of the Seventh Circuit differed in that it required a showing of bad faith to recover profits. This issue, in turn, led to a round of briefing. But defendant's brief on the subject ignored Seventh Circuit precedent from 1989 and 1992 contrary to defendant's position, and instead cited a 1962 Seventh Circuit case, a treatise, older district court cases, and cases from the Sixth Circuit and Federal Circuit. (See Dkt. 84, 85: Defendant's brief and Plaintiff's response.)

Given the extreme contentiousness of the defendant, the time spent on this matter was entirely reasonable and necessary.

Adjustment of Lodestar. "[T]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436; *see also Tolentino*, 46 F.3d at 652. Given the complete success achieved by plaintiff's lawyers, the court would be within its discretion to award 100% of the unadjusted lodestar amount. Nonetheless, solely to save the court the task of scrutinizing every time entry, plaintiff proposes a 5% reduction to the lodestar. This likely exceeds what the court would deduct were it to analyze each time entry, as defendant would have it do.

A fee award of 95% of lodestar is within the norm for achieving total victory. *E.g., Medline Industries, Inc. v. Medline Products Co.*, 2004 U.S. Dist. Lexis 12741, *1-2, 11-15 and 15 n.4 (N.D. Ill. 2004) (100% of lodestar for time spent obtaining default judgment, noting that "Plaintiff was fully successful in that endeavor"); *Microsoft Corp. v. T&S Int'l Corp.*, 2004 U.S. Dist. Lexis 3273, *1-3 (N.D. Ill. 2004) (100% of lodestar ($38,925.50) for obtaining default judgment); *Gentieu v. Tony Stone Images / Chicago, Inc.*, 2003 U.S. Dist. Lexis 15111, *2, 13-15 (N.D. Ill. 2003) (100% of lodestar ($503,959.50) for defendant obtaining summary judgment on copyright infringement claim); *In Re: Aimster Copyright Litigation*, 2003 U.S. Dist. Lexis 6270, *1-3 (N.D. Ill. 2003) (90% of lodestar ($99,000) for successful contempt proceeding); *NLFC, Inc. v. Devcom Mid-America, Inc.*, 916 F. Supp. 751 (N.D. Ill. 1995) (100% of lodestar ($165,562.50) for defendant obtaining summary judgment on copyright infringement claim);

*Martin v. City of Indianapolis*, 28 F. Supp. 2d 1098, 1103-06 (S.D. Ind. 1998) (95% of lodestar ($125,000) for plaintiff achieving "total victory on his claims" of copyright infringement on summary judgment).

Moreover, the resultant dollar amount is within the expected range for copyright and trademark cases. (Smith Dec. ¶ 14 & Tab 4 at pp. 95-96.)

### Costs and Expenses

Reasonable litigation expenses "generally are compensable as part of a reasonable attorney's fee." *Martin*, 28 F. Supp. 2d at 1107. *See also Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994) (same).

Here, plaintiff incurred $12,645.55 in costs and litigation expenses. The costs were reasonable and necessary. Defendant's objections should be disregarded.

Defendant objects to the cost of serving a written demand to cease sales of defendant's "Pull My Finger Santa" at a trade show in Las Vegas. To the contrary, upon discovering defendant's infringement of plaintiff's trademark, it was reasonable and necessary for plaintiff to take immediate steps to protect its trademark rights.

Defendant objects to the cost of obtaining from the court reporter transcripts of depositions taken by defendant. Defendant claims it would have given plaintiff copies of those transcripts for free. To put it bluntly, that is hogwash. This is the same defendant who would not even agree to split the cost of daily trial transcripts. Moreover, it is necessary to obtain transcripts from the court reporter, so that the court reporter can vouch for their accuracy.

Defendant objects to the expense of videotaping Mr. Green's deposition. This was a reasonable expense. Mr. Green was a key witness that plaintiff intended to present in its case in chief, but he was outside the trial subpoena power of the Northern District. His credibility or lack thereof was an important factor in the case. Plaintiff wanted to ensure that the jury could observe his demeanor while testifying, to aid their assessment of his credibility.

Defendant objects to the cost of plaintiff's demonstrative boards. The expense was reasonable and necessary. Plaintiff paid the market rate for the boards. It should be noted that plaintiff had to have some boards remade during trial, because defendant, after successfully moving to exclude certain evidence, turned around and introduced it the first day of trial. (See Dkt. 77, 82, excluding plaintiff's post-2003 sales data; Tab D, Trial Tr. at 105-06, defendant introducing same.)

### Prejudgment Interest

Plaintiff's post-trial motion sought prejudgment interest on all amounts other than punitive damages, including any fee award. The May 28 Order granted plaintiff's motion and awarded prejudgment interest at 4%. The court later ruled that prejudgment interest was to be compounded annually. As noted in plaintiff's post-trial motion (Dkt. 98 at 9), prejudgment interest on fees and expenses is appropriate where, as here, plaintiff's attorneys are operating on a contingency basis and have been "out of pocket" for the duration of the litigation. *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 663 n. 17 (7th Cir. 1985); *In re Continental Ill. Securities Litigation*, 962 F.2d 566, 570-571 (7th Cir. 1992).

Plaintiff seeks prejudgment interest on fees and expenses of $14,147.84. The calculation of interest is set forth at Smith Dec. Tab 6. Interest on the full lodestar fees comes to $14,628.91. Ninety-five percent of this amount is $13,897.46. The final number is obtained by adding to this amount the interest on litigation expenses, $250.38.

Plaintiff provided interest calculations to defendant during the LR 54.3 process. Defendant did not identify any objection to such calculations.[3]

### Conclusion

For all the reasons set forth above, plaintiff respectfully requests that the court award plaintiff $540,541.69 in attorneys' fees, $12,645.55 in litigation expenses, and $14,147.84 in prejudgment interest on those items, for a total award of $567,335.08, to be added to the existing judgment amount.

Dated: July 23, 2004

Respectfully submitted,

Greg Smith
Rhett Dennerline
Competition Law Group LLC
120 South State Street, 3rd Floor
Chicago, Illinois 60603
(312) 629-1918

Counsel for Plaintiff

---

[3] The calculations provided to defendant were based on monthly compounding; the present calculations have been revised to reflect the court's ruling that interest is to be compounded annually.

## **VERIFICATION**

The facts stated in the foregoing Fee Petition are true to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing statement of verification is true and correct.

Executed on **7-23-04**

_____
Greg Smith



# SEE CASE FILE FOR EXHIBITS