IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JCW INVESTMENTS, INC., d/b/a Tekky Toys,  )
                                          )
                    Plaintiff,            )
                                          )        No.  02 C 4950
         v.                               )
                                          )        Judge Robert W. Gettleman
NOVELTY, INC.,                            )
                                          )
                    Defendant.            )

## MEMORANDUM OPINION AND ORDER

Like the images in the mirrors of a barbershop, this case seems to go on infinitely, with

each new phase slightly smaller, but no less complex and vexing, than the one proceeding it.  The

latest dispute involves the successful plaintiff's petition for attorney's fees, including the most

recent request by plaintiff to require defendant to pay yet additional fees and costs incurred in

connection with the fee dispute.  By this opinion, the court intends to put an end to this nonsense.

The facts of this case are generally set forth in the court's previous opinions dated

September 20, 2002, and October 30, 2003.[1]  Briefly, defendant Novelty, Inc. copied the

trademarks and dolls belonging to plaintiff JCW Investments, Inc., in connection with plaintiff's

line of farting dolls.  The case was filed in mid-2002 and included litigation with respect to

plaintiff's successful motion for a preliminary injunction, plaintiff's successful motion for partial

summary judgment on the issue of validity of its copyright and defendant's copying of one of the

dolls, and a jury trial in which a verdict was rendered in favor of plaintiff and against defendant,

awarding actual damages of $241,000 and punitive damages of $50,000, for a total of $291,000.

---

[1]JCW Investments, Inc. v. Novelty, Inc., 222 F.Supp.2d 1030 (N.D. Ill. 2002); JCW
Investments, Inc. v. Novelty, Inc., 289 F.Supp.2d 1923 (N.D. Ill. 2003).

In addition, the parties engaged in extensive **post-trial** motions, which were all decided against defendant.

After all the dust settled with respect to the merits, plaintiff petitioned for attorney's fees because the jury had found, and the court concurred, that defendant willfully infringed plaintiff's marks. Pursuant to Local Rule 54.3, the parties apparently attempted to settle the issue of attorney's fees, and when they could not do so the court appointed a special master, John W. Cooley, pursuant to Fed. R. Civ. P. 53. The master conducted appropriate proceedings (no one complains about his procedural decisions) and, on February 9, 2005, issued a 54 page report and recommendation that the court award plaintiff the total sum of $596,399.82 in attorney's fees and expenses. Defendant has filed objections to the special master's report and recommendation, and the matter has been fully briefed. Defendant is correct that, pursuant to Fed. R. Civ. P. 53(g), the court reviews the special master's report and recommendation de novo.

Defendant first criticizes the special master by complaining that he did not apply "elevated scrutiny" to plaintiff's billing records because plaintiff's counsel had taken the case on a contingent fee basis, citing <u>Pennsylvania v. Delaware Valley Citizens Council for Clean Air</u>, 483 U.S. 711, 722 (1987). Defendant is wrong. <u>Delaware Valley</u> holds only that a court generally should not increase the lodestar fee to compensate the winning party's attorneys for having assumed the risk of the litigation. In the instant case, plaintiff does not request anything greater than the actual lodestar amount.

Defendant next criticizes the special master's analysis of the 2003 American Intellectual Property Law Association Report of Economic Survey ("AIPLA Report"). However, both parties in the proceedings before the special master cited to the AIPLA Report in arguing their

2

respective positions. That report found that a reasonable range for two separate cases through trial, one trademark and one copyright, resulted in fees in the range of $376,580 on the low end and $616,170 on the high end. Defendant complains that the special master's award in the instant case, which totaled (including expenses) 97% of the high end figure, was improper in light of the nature of this case, which defendant categorizes as "below average intellectual property litigation." Defendant argues that because there were no experts, the amount of paper was only a "one six inch stack," there were "only" eight depositions, and the trial lasted "only" two and one-half days, this case should have resulted in a fee award closer to the low end of the "reasonable" range rather than the high end.

The court disagrees. As noted above and in the previous opinions entered in this case, this litigation has been anything but "below average." In a dispute in which defendant's products were so obviously knock-offs of plaintiff's protected dolls, the case took on a life of its own unnecessarily and litigiously. Instead of simplifying the dispute, defendant insisted on contesting practically every issue, resulting in unnecessarily protracted litigation and requiring the court to decide numerous issues before the case even got to trial, including preliminary injunction and summary judgment motions. Significantly, defendant was justifiably found guilty of willful infringement, resulting in an award of punitive damages. There is nothing "below average" about this case.

Defendant next complains that the special master erred in giving too much weight to plaintiff's billing records, and not considering sufficiently that defendant's attorneys billed far less than plaintiff's. The court has reviewed the special master's analysis of the billing records and finds nothing wrong, and therefore adopts that analysis. Perhaps the best that can be said

3

about defendant's argument on this point is that the proof is in the pudding. Despite defendant's position that it had to assume a burden of proof on its counterclaims and in light of the court's early rulings in the case, the fact remains that the burden of proof of infringement and remedy was always on plaintiff. By meeting that burden, plaintiff proved its case to the satisfaction of the court and the jury. That its lawyers spent more time than defendant's in doing so can hardly be used to reduce the amount of fees owed to plaintiff. Defendant's position that the superior experience of Greg Smith, plaintiff's lead counsel, should have resulted in efficiencies when compared to the relative inexperience of defendant's lead counsel is, as the special master noted, "sheer conjecture." Without proof that plaintiff's attorneys fabricated time records or padded them in an inappropriate manner, there is simply no reason to reduce the fees generated by time that was so obviously well-spent from plaintiff's perspective.

Likewise, defendant's specific objections to the hours spent by plaintiff's attorneys in amending the complaint, conducting discovery, post-trial motions, the summary judgment proceedings, and trial preparation are without merit. The fact that defendant's lawyers spent less time, again, is not determinative. To the contrary, perhaps defendant's lawyers spent less time because they had less evidence with which to defend against an overwhelming plaintiff's case of copyright and trademark infringement. Finally, on this point, the court does not find the entries that defendant contends are "vague" to be anything of the sort. Although other judges have from time to time criticized counsel for failing to detail time spent on such matters as trial preparation and research, given the litigious nature of this case this court does not find the entries to be sufficiently vague to require a reduction. As the special master noted, of the 18 entries to which defendant objected, "11 of them relate to preparation for trial and the other 7 entries are some

4

time entries ranging from .25 to 1.5 hours. ... There is no suggestion by defendant that plaintiff's counsel did not perform legal services in connection with these entries." This court finds no reason to disturb that conclusion.

Defendant next complains about the special master's awarding of time spent for what defendant calls "office overhead," based on his finding that defense counsel actually billed approximately seven hours more than plaintiff's for similar tasks. The court finds nothing wrong with this reasoning; these are costs that are borne by the parties and are properly shifted to the losing party, particularly a losing party who has been found guilty of willful misconduct such as defendant in the instant case.

Defendant also complains about so-called "inefficiencies caused by plaintiff's loss of its primary counsel." Again, the fact that Mr. Smith took over this case after an associate left his firm is a common reality in the practice of law for which a successful party such as plaintiff should not be penalized. Mr. Smith's conduct of this case has been exemplary throughout, and it was through his efforts primarily that plaintiff achieved the success that it has in this litigation. The court can find no case holding that a party is required to use the lawyer with the lowest billing rate on a case, particularly a case as vigorously litigated as this one.

As noted by defendant, the special master did make a number or reductions from plaintiff's fee request, including a 25% reduction in the amount billed with respect to the final pretrial order and the preliminary injunction (the two matters about which defendant complains in its objections to the special master's report). The court has reviewed those records and concurs that a 25% reduction is reasonable. The court notes that defendant had the choice of putting plaintiff to its burden in obtaining the preliminary injunction, and that it is the plaintiff's

5

duty to prepare the first draft of the final pretrial order – a duty which by its nature requires a far greater amount of time to be spent by the plaintiff's lawyers than the defendant's.

This leaves two matters about which defendant complains that are troublesome to the court. First, plaintiff's attorneys billed an additional $80,000 between the filing of the first fee petition and the updated fee petition. The special master choose not to reduce this amount. The court has reviewed the time records for these fees, and has determined that they are excessive.[2] Accordingly, the court reduces this particular item by 25%, or $20,000.

The second matter about which the court agrees with defendant is the cost of $1,800 foam boards used for demonstrative exhibits by plaintiff. Defendant claims that it purchased similar boards at Kinkos for approximately $40 a piece, a cost that is much more in line with what this court believes is appropriate. Defendant seeks at "at least of 50% reduction" for this excessive cost, and the court agrees. Accordingly, the court will reduce this particular cost by $1,300.

Plaintiff has requested the court to alter its initial order assessing the special master's fees equally between the parties, and awarding $10,212.50 in additional fees incurred by plaintiff since the special master's report in responding to defendant's objections. In the exercise of its discretion, the court declines both requests by plaintiff. It is time this litigation came to an end. After failure by the parties to settle the fee issue the court determined that both parties should bear their own costs and fees in further prosecution of plaintiff's requests for attorney's fees. The court sees no reason to vary from that determination.

---

[2]Plaintiff failed to address this issue in its response to defendant's objection to the special master's report.

6

## CONCLUSION

For the reasons stated above, the court reduces the amount recommended by the special master by $21,300, for a total award of fees and expenses of $575,099.82.

**ENTER:**    **April 25, 2005**

_____
**Robert W. Gettleman**
**United States District Judge**